FOURTH DIVISION

FILED: 7/20/00

No.  1-99-2758

MICHAEL TERRANO, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee,     ) COOK COUNTY

 )

v. )

)

THE RETIREMENT BOARD OF THE POLICEMEN'S )

ANNUITY AND BENEFIT FUND OF THE CITY OF ) 

CHICAGO, ) HONORABLE

   ) ELLIS E. REID,

Defendant-Appellant. ) JUDGE PRESIDING.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) appeals from an order of the circuit court which, on administrative review, reversed its decision to deny the plaintiff, Michael Terrano, duty disability benefits under section 5-154 of the Illinois Pension Code (Code) (40 ILCS 5/5-154 (West 1996)).  For the reasons which follow, we affirm the circuit court's order reversing the decision of the Board, but modify that order in certain respects.  

On July 10, 1995, the plaintiff became a member of the Chicago police department (Department).  During training exercises on August 25, 1995, the plaintiff injured his right knee, severing the anterior cruciate ligament.  He was taken to a hospital for treatment and the Department placed him on medical leave.  In the months which followed, the plaintiff underwent out-patient surgery and received physical therapy.  Dr. Mitchell Krieger, the plaintiff's treating physician, released him to return to work in November of 1995, and the plaintiff subsequently completed his training.  

While on foot patrol in June of 1996, the plaintiff experienced pain and swelling in his right knee.  The Department again placed the plaintiff on medical leave and referred him back to Dr. Krieger.  After examining the plaintiff, Dr. Krieger concluded that the instability and swelling of the plaintiff's knee was "a continuation of his duty-related knee injury" of the previous summer.  Dr. Krieger recommended that the plaintiff undergo reconstructive surgery, which was performed by Dr. Ronald Silver on July 29, 1996.

Dr. Silver issued a report to the Department on November 26, 1996, which states, in pertinent part, as follows:

"Michael's [plaintiff] knee looks great three and one-half months status post anterior cruciate reconstruction.  He has full range of motion, normal stability and good strength.

At this time we will permit him to return to work as of December 2, 1996[,] and he will do some home exercises prior to his re-evaluation in two months."

The Department's records indicate that the plaintiff was to report for duty on December 3, 1996.  However, on December 3, he called the Department's medical section and reported that his knee was swollen.  As a consequence, the plaintiff did not report for duty and was again placed on medical leave.

The plaintiff was examined by Dr. Silver in June of 1997.  In a letter to the Department dated June 24, 1997, Dr. Silver stated:

"My impression is that Michael [plaintiff] has made a good recovery from anterior cruciate reconstruction; however, he has significant discomfort when squatting or kneeling and is unable to jump or run for any significant distance.  These limitations are permanent but otherwise he may continue work activities within those limitations."

On September 17, 1997, the plaintiff made application to the Board for duty disability benefits and was referred to the Board's physician, Dr. S. David Demorest, for a physical examination.  Dr. Demorest examined the plaintiff on September 18, 1997, and recommended that he be "re-evaluated by orthopedic surgery to assess his status and ability to return to work."

On September 19, 1997, the plaintiff's employment with the Department was terminated for violation of medical roll procedures.   At its meeting on November 25, 1997, the Board awarded the plaintiff ordinary disability benefits pursuant to section 5-155 of the Code (40 ILCS 5/5-155 (West 1996)), without prejudice to his claim for duty disability benefits.  This action was taken because the plaintiff had not as yet been evaluated by an orthopedic surgeon as recommended by Dr. Demorest. 

The Board referred the plaintiff to Dr. Alfred A. Akkeron who examined the plaintiff and performed an orthopedic evaluation on December 4, 1997.  In a report to the Department dated the same day, Dr. Akkeron stated:

"My impression is that this patient continues to have laxity of the anterior cruciate ligament status post anterior cruciate ligament reconstruction.  This is supported by a clinical evaluation and by the patient's history.  Because of this particular condition, I do not feel that this patient will be able to perform the duties as an active police officer.  I feel at the present time that he has reached his maximum medical improvement and will not get any further stability of the anterior cruciate ligament."

The plaintiff's application for duty disability benefits came before the Board for hearing at its regular meeting on March 11, 1998.  Three witnesses testified: the plaintiff, Dr. Akkeron, and Dr. Katherine Pajak, the Department's physician.  However, only the testimony of the plaintiff and Dr. Akkeron is relevant to the issues before us.

The plaintiff testified to the manner in which he was injured and the medical treatment he received.  He stated that, on December 3, 1996, the day he was to return to work, his knee began to swell after he completed his exercises.  Although he was again placed on medical leave, he did not see a physician until he was examined by Dr. Silver in June of 1997.  It was the plaintiff's belief that his injury prevented him from even performing sedentary duties.

Dr. Akkeron testified to the matters contained in his report.  According to Dr. Akkeron, the plaintiff's condition is related to the injury he sustained while training in August of 1995, and the injury to the plaintiff's right knee is permanent.  Dr. Akkeron opined that the plaintiff could not return to duty as an active police officer, but stated that he could perform sedentary duties. On cross-examination, Dr. Akkeron admitted that he did not know what positions might be available within the Department for individuals only capable of performing sedentary duties.

In addition to the oral testimony taken at the meeting, the Board had before it the plaintiff's medical records, reports from the various physicians who treated and examined the plaintiff, and the Department's records concerning the plaintiff's injury and medical leave.  After the hearing, the Board took the matter under advisement.

On August 27, 1998, a majority of the members of the Board voted to deny the plaintiff's application, and the Board issued a written decision on the same day.  In its written decision, the Board found, 
inter
 
alia
, that the plaintiff sustained an injury to his right knee in the performance of an act of duty on August 25, 1995, but concluded that he was not disabled as that term is defined in the Code.  

After the Board rendered its decision, the plaintiff filed the instant action for administrative review, alleging that the Board's decision is against the manifest weight of the evidence, and that he was deprived of a fair hearing.  Initially, the circuit court issued an order affirming the Board's decision.  However, after the plaintiff moved the court to reconsider, the circuit court issued an amended order, reversing the Board's decision.  Specifically, the amended order provides, in pertinent part, that:

"[T]he decision of the Retirement Board of the Policemen's Annuity and Benefit Fund is reversed and Terrano is found to be entitled to duty disability benefits pending an offer by the Chicago Police Department of a sedentary, limited duty position that he could medically perform and remanded to the Retirement Board for that purpose." 

The Board filed this appeal from the circuit court's order, contending: 1) that its decision to deny duty disability benefits to the plaintiff is not against the manifest weight of the evidence; and 2) that the plaintiff received a fair hearing.  However, because of our resolution of the first issue raised by the Board, we need not address the second.

The Administrative Review Law provides that, in every action to review an administrative decision, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be 
prima
 
facie
 true and correct."  735 ILCS 5/3-110 (West 1998).  In 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 606 N.E.2d 1111 (1992), our Supreme Court construed this statute and held that:

"[O]n administrative review, it is not a court's function to reweigh the evidence or make an independent determination of the facts.  Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. [Citations.]  An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  [Citations.]"  
Abrahamson
, 153 Ill. 2d at 88.

Determinations as to the weight to be given to evidence and the credibility of witnesses are matters within the province of the agency.  
King v. Justice Party
, 284 Ill. App. 3d 886, 888, 672 N.E.2d 900 (1996).  The mere fact that a conclusion opposite to the one reached by the agency is reasonable or that the reviewing court might have ruled differently will not justify the reversal of administrative findings.  
Abrahamson
, 153 Ill. 2d at 88.  If the record contains evidence to support the agency's decision, it should be affirmed.  
Commonwealth Edison Co. v. Property Tax Appeal Board
, 102 Ill. 2d 443, 467, 468 N.E.2d 948 (1984).  When, however, an administrative decision is against the manifest weight of the evidence, it is the court's duty to reverse it.   
Zien v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago
, 236 Ill. App. 3d 499, 507, 603 N.E.2d 777 (1992).

The Board is correct in its assertion that an applicant has the burden of establishing his entitlement to duty disability benefits under the Code.  
Iwanski v. Streamwood Police Pension Board
, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691 (1992).  It is the applicant's burden to establish both that he is disabled and that his disability is the result of an injury incurred in the performance of an act of duty.  40 ILCS 5/5-154 (West 1996).  However, since the Board found that the injury to the plaintiff's right knee was incurred in the performance of an act of duty, the only question before us is whether the Board's finding that the plaintiff is not disabled is against the manifest weight of the evidence.

Section 5-115 of the Code defines a disability as a "condition of physical or mental incapacity to perform any assigned duty or duties in the police service."  40 ILCS 5/5-115 (West 1996).  In this case, the uncontradicted testimony of Dr. Akkeron, the Board's own medical expert, established that the plaintiff could not perform the duties of an active police officer.  Dr. Akkeron's conclusion in this regard is supported by Dr. Silver's report of June 24, 1997, which states that the plaintiff has significant discomfort when squatting or kneeling and is unable to jump or run for any significant distance.  Both physicians concluded that the plaintiff's condition is permanent.  The medical evidence in the record establishing the plaintiff's physical limitations and inability to perform the duties of an active police officer is uncontradicted and, therefore, could not have been disregarded by the Board.  See 
People ex rel. Brown v. Baker
, 88 Ill. 2d 81, 85, 430 N.E.2d 1126 (1981).   Nevertheless, the Board argues that its finding that the plaintiff is not disabled is not against the manifest weight of the evidence.  Its argument in this regard seems to be based upon the proposition that the plaintiff did not prove that he was disabled because he failed to establish that no limited duty position within the Department was available to him.

The fact that an individual has physical limitations which prevent him from performing the duties of an active police officer is not necessarily dispositive of the question of whether he is disabled within the meaning of the Code.  An individual may be physically incapable of performing the duties of an active police officer and yet not be disabled within the meaning of the Code if a position is made available to him within the police department which can be performed by a person with his physical limitations.  See 
Peterson v. Board of Trustees of the Firemen's Pension Fund of the City of Des Plaines
, 54 Ill. 2d 260, 296 N.E.2d 721 (1973); 
Thurow v. Police Pension Board of the Village of Fox Lake
, 180 Ill. App. 3d 683, 536 N.E.2d 155 (1989).  However, unlike the facts in 
Peterson
, there is no evidence in the record before us that a position existed within the Department which could be performed by a person with the plaintiff's physical limitations or that any limited duty position was offered to the plaintiff.  See 
Peterson
, 54 Ill. 2d at 262.  To be sure, Dr. Akkeron testified that the plaintiff could perform sedentary duties and Dr. Silver's report states that the plaintiff could work within certain specified physical limitations, but there is no evidence that any such limited duty positions existed.

In light of the uncontradicted medical evidence establishing that the plaintiff's injury prevents him from performing the duties of an active police officer and in the total absence of any evidence of either the existence of a limited duty position within the Department which could be performed by an individual with the plaintiff's physical limitations or that such a position was ever offered to the plaintiff, we conclude that the Board's finding that the plaintiff is "not disabled as disability is defined in the Act [Code]" is against the manifest weight of the evidence.  Even if we were to interpret the Board's finding as being based upon the plaintiff's perceived failure to meet his burden of proof, as the Board seems to argue, our conclusion would not change.

Once the evidence before the Board established that the plaintiff is physically incapable of performing the duties of an active police officer, the plaintiff met his initial burden of proving that he is disabled.  Had there been evidence introduced that the Department offered the plaintiff a limited duty position, it would have been plaintiff's burden to introduce evidence that he is physically incapable of performing the duties of the position offered, and it would have been the Board's function to resolve the question.  However, in the absence of any evidence that such a position was ever offered to the plaintiff, the mere existence of such a position could not support a finding that the plaintiff is not disabled.  The opinion in 
Peterson
 makes it quite clear that it is a firm offer of a limited duty position that could be performed by an individual with the applicant's physical limitations which renders the applicant not disabled within the meaning of the Code despite his inability to perform the duties of an active police officer.  See 
Peterson
, 54 Ill. 2d at 265-66; see also 
Thurow
, 180 Ill. App. 3d at 691-92.  Unlike the facts in 
Peterson
 and 
Thurow
, the Board in this case did not find that a limited duty position was made available to the plaintiff.  
Peterson
, 54 Ill. 2d at 262;  
Thurow
, 180 Ill. App. 3d at 691.  In point of fact, the Department's records reveal that no such position was offered to the plaintiff from June 24, 1997, the date of Dr. Silver's report which placed the Department on notice that the plaintiff could work within certain physical limitations, and September 19, 1997, the date that the plaintiff's employment with the Department was terminated.

For the foregoing reasons, we affirm the circuit court's order reversing the decision of the Board which denied the plaintiff duty disability benefits.  We are, however, compelled to exercise our power under Supreme Court Rule 366 (155 Ill. 2d R. 366) and modify the circuit court's order. 

As stated earlier, the circuit court determined that the plaintiff was entitled to duty disability benefits "pending an offer by the Chicago Police Department of a sedentary, limited duty position that he could medically perform."  While we agree that, should the Department offer the plaintiff such a position, his right to duty disability benefits would cease, we do not agree that the Board is necessarily required to pay the plaintiff those benefits until such an offer is made.

Under the Code, there are a number of future events which could impact upon the plaintiff's right to receive duty disability benefits aside from an offer of a limited duty position with the Department.  For example, the plaintiff's right to duty disability benefits would cease upon the happening of any of the following events: 1) the plaintiff attaining the age of 63 (40 ILCS 5/5-154 (West 1998)); 2) the plaintiff refusing to be examined by a physician appointed by the Board (40 ILCS 5/5-157 (West 1998)); or 3) the plaintiff being convicted of a felony while receiving duty disability benefits (40 ILCS 5/5-227 (West 1998)).  The benefits to which the plaintiff is entitled could be reduced or even suspended if he were to assume regular employment for compensation if his disability benefits plus his compensation from such employment exceeds 150% of the salary which would be paid to him if he were working in his regular position as a policeman.  See 40 ILCS 5/5-

157 (West 1998).  Additionally, the plaintiff will be required to undergo a physical examination once a year to determine whether he continues to be disabled and, should it be determined at some future time that the plaintiff is no longer disabled, the Board may be required to discontinue his benefits.  See 40 ILCS 5/5-156 (West 1998).  Consequently, we are modifying the circuit court's order to provide merely that the decision of the Board denying the plaintiff duty disability benefits is reversed and the matter is remanded to the Board for the purpose of awarding those benefits, deleting therefrom all reference to the plaintiff's entitlement to those benefits pending an offer by the Department of a sedentary, limited duty position.  How long the plaintiff will be entitled to duty disability benefits is a matter prescribed by the Code.

Affirmed as modified.

HALL and BARTH, JJ., concur.