2024 IL App (1st) 231699-U

No. 1-23-1699

Order filed June 27, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN OHLICHER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 22 CH 1168 |
| | ) | |
| THE RETIREMENT BOARD OF the POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF the CITY OF | ) | |
| CHICAGO, | ) | Honorable, |
| | ) | Joel Chupack, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago finding that plaintiff police officer was not entitled to a duty disability pension benefit. We also reverse the orders of the circuit court affirming the Board's decision. We remand the cause to the Board with directions to enter an order granting the officer's application for a duty disability pension benefit.

¶ 2    Chicago police officer John Ohlicher (Ohlicher)[1] appeals the orders of the circuit court of

---

[1]The record contains officer Ohlicher's first name spelled as both "John" and "Jon." We will follow

Cook County affirming on administrative review the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board), denying his claim for duty disability pension benefits. For the reasons that follow, we reverse both the Board's decision and the circuit court's orders affirming that decision.[2]

¶ 3                                    I. BACKGROUND

¶ 4     Ohlicher became a sworn police officer for the Chicago Police Department (Department) on August 25, 2003. On December 4, 2020, Ohlicher and his partner Officer Eugene Shields responded to a call for police assistance involving a man whose family claimed he was suffering a mental health crisis. After arriving at the scene, the officers placed the man in handcuffs for transportation to the hospital. As the officers were walking the individual to the police vehicle, he purposefully collapsed, becoming "dead weight." Ohlicher, who was holding the man with his right arm, tried to prevent the man from striking his head on the ground. Ohlicher then heard a "pop" in his right elbow and felt intense pain in his arm.

¶ 5     Ohlicher and Shields transported the man to Advocate Illinois Masonic Medical Center for treatment. While at the hospital, Ohlicher sought treatment for his painful elbow. He was diagnosed with elbow pain, prescribed ibuprofen, and returned to work the following day. On January 1, 2020, Ohlicher took medical leave and was ultimately treated by orthopedic surgeon Dr. Taizoon H. Baxamusa.

¶ 6     Following X-rays, a magnetic resonance image (MRI), and an electromyography (EMG), it was recommended that Ohlicher undergo surgery to repair nerve damage to his right elbow,

_____

the spelling of the name used in the caption.

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

which impaired his ability to grip and discharge his firearm, a Glock 21 handgun. Dr. Baxamusa performed the surgery on March 10, 2021. After the surgery, Ohlicher was referred to occupational therapy and remained off duty from work.

¶ 7    In February 2022, Dr. Baxamusa recommended that Ohlicher undergo an ultrasound to determine the source of persistent pain in his arm. Following the ultrasound, Ohlicher underwent a functional capacity evaluation (FCE) on May 25, 2022. The results of the FCE showed that Ohlicher had reduced grip strength in his right hand as compared to his left hand. During a "weapon recoil" test, he was only able to hold a three-pound weight in his right hand for approximately eighteen seconds. He was unable to perform a simulated weapon draw using a three-pound weight. It was determined that Ohlicher failed to demonstrate the physical capabilities and tolerances to perform all the essential functions of a Chicago police officer.

¶ 8    After evaluating the FCE results, Dr. Baxamusa released Ohlicher on June 26, 2022, to return to sedentary, light duty with permanent work-related restrictions, including lifting no more than 10 pounds and no carrying, handling, or using his department-approved firearm.

¶ 9    Ohlicher subsequently applied for disability benefits with the Board, which deferred the application.

¶ 10    The Board retained Dr. M. Bryan Neal, who performed an independent medical examination (IME) of Ohlicher on June 27, 2022. Dr. Neal concluded that Ohlicher was able to return to work in a limited-duty capacity and that he had the physical ability to safely carry, handle, and use a department-approved firearm. Dr. Neal added that he "will not conclude [Ohlicher] has the physical ability to safely effectuate and [sic] arrest of an arrestee who is defined as an active resister" and "did not conclude [Ohlicher] could return to full unrestricted duty as a police officer but do conclude he could return to limited duty."

3

¶ 11 Following Dr. Neal's examination, Ohlicher reported to the Department's medical services section to be examined in connection with his application for reinstatement. In a letter dated August 16, 2022, the medical services section denied Ohlicher's application for reinstatement. It was determined that Ohlicher was not qualified to return to duty without restrictions and that based on restrictions per the treating physician, he was not a candidate for limited duty.

¶ 12 The Board held a hearing on Ohlicher's application for disability benefits on September 29, 2022. At the conclusion of the hearing, the Board voted 4-2 to deny Ohlicher a duty disability pension benefit or an ordinary disability pension benefit. Before adjourning, the Board's president stated that Ohlicher needed "to go back the Department to apply for his light duty position based on the doctor's IME."

¶ 13 The Board subsequently sent Ohlicher a letter dated September 30, 2022, stating that his medical condition was such that he could and should seek return to service with the Department. The Board advised Ohlicher to promptly report to the Human Resources Unit located at 3510 S. Michigan Ave. to apply for a return to active CPD service.

¶ 14 The Department referred Ohlicher to its medical services section and on October 18, 2022, Ohlicher was examined by Dr. Kristin Houseknecht at the Occupational Health Centers of Illinois (Concentra). Dr. Houseknecht issued a report in which she concluded that Ohlicher was unable to safely carry and handle a firearm.

¶ 15 The Board issued a written decision and order on October 27, 2022, finding that Ohlicher was not disabled because he was "capable of performing police duties in the Chicago Police Department." As a result, the Board determined that Ohlicher was not entitled to a duty disability pension benefit.

¶ 16 On October 31, 2022, the Department's medical services section determined that, based on

Dr. Houseknecht's report, Ohlicher was "NOT QUALIFIED to return to duty without restrictions. Based on restrictions per treating physician, member is not a candidate for Limited Duty." Ohlicher's second application for reinstatement was denied.

¶ 17    Ohlicher filed a petition for administrative review on November 14, 2022, seeking review of the Board's decision denying him duty disability pension benefits. The circuit court of Cook County affirmed the Board's decision in an order issued on June 21, 2023. The circuit court denied Ohlicher's motion for reconsideration on September 18, 2023, and this timely appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    "In an appeal from an administrative agency's decision, we review the agency's determination, not that of the circuit court." *Lambert v. Downers Grove Fire Department Pension Board*, 2013 IL App (2d) 110824, ¶ 23. Here, our review is focused on the Board's decision. The question of whether the evidence in the record supports the Board's denial of a plaintiff's application for a disability pension is a question of fact reviewed under a manifest weight of the evidence standard. *Kouzoukas v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 464 (2009). An administrative agency's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 20    However, when the Board questions whether a plaintiff is disabled within the meaning of the Pension Code and requires us to interpret the meaning of the Code, it is a mixed question of law and fact, subject to the clearly erroneous standard. *Kouzoukas*, 234 Ill. 2d at 464. "An administrative decision is clearly erroneous where the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.*

¶ 21    In reaching its decision that Ohlicher was not disabled, the Board relied on section 5-115

5

of the Illinois Pension Code (Pension Code) (40 ILCS 5/5-115 (West 2020)). This section defines "disability" as a "condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5-115 (West 2020).

¶ 22    In its written order, the Board found that while Ohlicher suffered an injury, Dr. Neal concluded that the injury did not prevent Ohlicher from performing limited duty. Based on Ohlicher's ability to perform limited duty, the Board determined that he was not disabled within the meaning of the Pension Code. However, as this court explained:

> "An individual may be physically incapable of performing the duties of an active police officer and yet not be disabled within the meaning of the Code if a position is made available to him within the police department which can be performed by a person with his physical limitations. *** [I]t is the offer of a limited duty position that could be performed by an individual with the applicant's physical limitations which renders the applicant not disabled within the meaning of the Code despite his inability to perform the duties of an active police officer." *Terrano v. Retirement Board of the Policemen's Annuity and Benefit Found of the City of Chicago*, 315 Ill. App. 3d 270, 275-76 (2000).

In this case, Ohlicher presented uncontroverted evidence that he was never offered a limited duty position within the Department.

¶ 23    Police officers like Ohlicher who apply for duty disability benefits pursuant to the Pension Code bear the burden of demonstrating that they are disabled and that their disability resulted from an injury sustained in the line of duty. *Terrano,* 315 Ill. App. 3d at 274; see *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007) (a plaintiff in an administrative proceeding bears the burden of proof). The applicant can meet this initial burden by presenting evidence to the Board that his injury renders him physically incapable of performing the duties of

an active police officer. *Terrano,* 315 Ill. App. 3d at 276. Ohlicher met this initial burden when he presented medical evidence to the Board establishing that his line-of-duty injury rendered him incapable of safely handling and using his service firearm.

¶ 24    Once this initial burden was met, if evidence was produced that the Department offered Ohlicher a limited duty position, then it would have been his burden to introduce evidence demonstrating that he was physically incapable of performing the duties of the offered position. *Terrano,* 315 Ill. App. 3d at 276. After that, it would have been the function of the Board to resolve the issue. *Id*.

¶ 25    In this case, both Dr. Baxamusa, and the Board's appointed doctor, Dr. Neal, agreed that Ohlicher could return to duty, but in a limited and restricted capacity. Based on these medical opinions, Ohlicher applied for reinstatement with the Department on two separate occasions, requesting that he be given a limited duty position, and each time his request was rejected.

¶ 26    Ohlicher was in a catch-22 situation. He was denied reinstatement as the Department determined that his injury rendered him incapable of performing the duties of an active police officer. The Board determined he was not disabled and was ineligible to receive duty disability benefits because it found that his injury did not prevent him from "performing sworn, limited police duties." See *Kouzoukas*, 234 Ill. 2d at 471 (discussing similar catch-22 situation).

¶ 27    We find that the Board's determination that Ohlicher was not disabled within the meaning of the Pension Code was against the manifest weight of the evidence, where the medical evidence established that his line-of-duty injury prevented him from performing duties of an active police officer and no evidence was presented that he was offered a limited duty position within the Department. See *Terrano*, 315 Ill. App. 3d at 275-76 (Board's finding that claimant was not disabled within the meaning of the Pension Code was against the manifest weight of the evidence

where medical evidence established that claimant's injury prevented him from performing duties of an active police officer and no evidence was presented that claimant was offered a limited duty position); see also *Kouzoukas*, 234 Ill. 2d at 471 (since claimant was never offered a position to accommodate her physical restrictions, the Board could not say that she was not disabled within the meaning of the Pension Code). The Board's finding that Ohlicher was not disabled within the meaning of the Pension Code was against the manifest weight of the evidence, as the opposite conclusion was clearly evident.

¶ 28    Finally, we reject the Board's exclusive jurisdiction argument. This argument has already been decided adversely to the Board by our supreme court in *Kouzoukas*, 234 Ill. 2d at 470-72. In *Kouzoukas*, our supreme court held that making the decision to grant or reject a claimant's application for a duty disability benefit dependent on the availability of an assignment in the Department within the claimant's restrictions, does not encroach on the Board's exclusive original jurisdiction under section 5-189 of the Pension Code (40 ILCS 5/5-189 (West 2006)).[3] We have no indication from our supreme court that it is departing from its holding in *Kouzoukas*.

¶ 29                                III. CONCLUSION

¶ 30    For the foregoing reasons, the orders of the circuit court and the decision of the Board are reversed, and the matter is remanded to the Board with directions to enter an order granting Ohlicher's application for a duty disability pension benefit.

¶ 31    Reversed and remanded with directions.

---

[3]Section 5-189 of the Pension Code, entitled "To authorize payments" provides in part that: "The Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 ILCS 5/5-189 (West 2020).