2024 IL App (1st) 240049

No. 1-24-0049

Opinion filed November 15, 2024

Fifth Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DONALD B. MORELAND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 22 CH 12585 |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | |
| CHICAGO, | ) | Honorable |
| | ) | Sophia H. Hall, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment and opinion.

**OPINION**

¶ 1    The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) denied the application of plaintiff, Donald B. Moreland, for duty disability benefits. On administrative review, the circuit court affirmed the Board's decision. Moreland now appeals that judgment and contends that the Board's decision to deny him disability benefits was in error. Moreland argues that the Board's decision placed him in an untenable catch-22 situation where he is unable to work because his own employer, the Chicago Police Department, has determined he

is disabled and will not assign him a position within the department yet he cannot obtain disability benefits. For reasons that follow, we reverse the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3      In 2013, Moreland became a Chicago police officer. On February 28, 2017, Moreland was on duty and responding to a call of a person shot when his vehicle was involved in a traffic accident, resulting in his vehicle hitting a parked vehicle and tree. As a result of the accident, Moreland sustained various injuries, including to his lower back and left hip. Five years later, Moreland applied for duty disability benefits due to the injuries he suffered to his back and left hip because of the traffic accident. Moreland's application proceeded to an October 2022 hearing.

¶ 4                                    A. The Hearing

¶ 5      At the hearing, the Board and Moreland entered numerous medical records into evidence. Moreland also testified and discussed the February 28, 2017, vehicle accident that resulted in his various back and left hip ailments. Immediately following the accident, Moreland experienced back and left hip pain, but he hoped it would dissipate with time. Approximately six weeks after the accident, Moreland went to the emergency room due to severe lower back pain. There, he was diagnosed with sciatica on his right side and prescribed various medications. On April 10, 2017, Moreland went on medical leave due to the back pain.

¶ 6      The following month, Moreland's primary care physician, Dr. Robert Demke, evaluated him and referred him to a chiropractor for physical therapy. Dr. Demke also recommended Moreland receive a magnetic resonance imaging (MRI), but the imaging was not approved. In early July 2017, following a course of physical therapy, Dr. Demke cleared Moreland for full, unrestricted duty, and Moreland returned to such duty. The following month, Dr. Brian Clay, a pain management specialist at the Illinois Bone and Joint Institute, evaluated Moreland due to his

further complaints of low back and low extremity pain. Although Dr. Clay also recommended an MRI, the imaging was again not approved. Dr. Clay advised Moreland to complete a home exercise regimen. Moreland continued working full, unrestricted duty until early December 2020, when he went on medical leave after contracting COVID-19. His COVID-19 medical leave lasted until January 8, 2021.

¶ 7 The following day, Moreland continued to be on medical leave, but now due to recurring issues with his back, specifically "really bad" back spasms. Later that month, Moreland returned to Dr. Clay for the first time since 2017 complaining of lower back and lower extremity pain. Dr. Clay recommended an MRI, more physical therapy, and remaining off-duty. In late January 2021, Moreland underwent an MRI, which revealed multiple herniated discs and disc degeneration. According to Dr. Clay, Moreland's disc issues "appear[ed] to be clinically significant." Based on the MRI, Dr. Clay diagnosed Moreland with low back pain, lumbar radiculopathy, and lumbar disc herniation. In light of these diagnoses, Dr. Clay referred Moreland to Dr. Steven Mardjetko, an orthopedic surgeon at the Illinois Bone and Joint Institute. In February 2021, Moreland met with Dr. Mardjetko, who advised Moreland to undergo an electromyography of his lower extremities and to continue with physical therapy, which had been helpful to his symptoms.

¶ 8 Over the next two months, Moreland underwent additional imaging on his lower back, including the electromyography, and left hip. The electromyography report indicated that Moreland had evidence of mild chronic L5 radiculopathy on his right side. As for Moreland's hip issues, Dr. Ritesh Shah, a doctor at the Illinois Bone and Joint Institute, diagnosed him with left hip impingement and a labral tear. Also, around this time, according to Moreland's testimony, he passed an annual prescribed firearm qualification certification with the Chicago Police Department.

¶ 9     In June 2021, Dr. Shane Nho, an orthopedic surgeon at Midwest Orthopaedics at Rush, performed a hip arthroscopy and related procedures on Moreland's left hip. During his recovery, Dr. Mardjetko again evaluated Moreland's low back issues, which were described in notes as "significant pain." Due to the chronic nature of Moreland's back issues, Dr. Mardjetko recommended that Moreland perform a functional capacity evaluation. Until that evaluation was performed, Dr. Mardjetko considered Moreland "temporarily disabled." According to Dr. Mardjetko's notes, the functional capacity evaluation would provide insight into the "kind of work options" that would exist for Moreland. Moreland testified that he requested the functional capacity evaluation, but his request was denied because he had already been deemed disabled by Dr. Mardjetko. By October 2021, according to Dr. Nho's medical notes, Moreland was progressing well from the hip surgery, but he still recommended that Moreland continue physical therapy and remain off-duty. During this month, Moreland exhausted his medical leave and began a personal disability leave of absence that did not include pay.

¶ 10    In March 2022, Dr. Nho reevaluated Moreland and determined that he had reached maximum medical improvement with respect to his left hip and approved his return to full, unrestricted duty as it related to the left hip issues. However, Dr. Nho noted in his report that Moreland continued to complain of low back pain and was seeing specialists for the issue. Two months later, the Board's appointed doctor, Dr. Jay Levin, performed an independent medical examination of Moreland, specific to his lumbar spine and left hip issues, which included evaluating Moreland in person and reviewing his medical records. In his report to the Board, Dr. Levin concluded that Moreland could "work in a full unrestricted capacity regarding his lumbar spine and left hip as it relates to the occurrence of February 28, 2017." Specifically, Dr. Levin found that Moreland could (1) safely carry, handle and use his firearm; (2) maintain an

independent and stable gait without the assistance of external ambulatory supporting devices; (3) safely drive a motor vehicle; and (4) safely effectuate the arrest of an arrestee who was actively resisting arrest.

¶ 11     Also in May 2022, after Moreland had applied for temporary disability benefits, the Board deferred the request in favor of a full hearing. In light of the deferral, Moreland's attorney told him to request reinstatement with the Chicago Police Department. Thereafter, Moreland applied for reinstatement as a police officer. The following month, due to his back issues, Dr. Mardjetko opined that: "Moreland is permanently disabled from activities of active police work and also unable to safely carry and discharge a weapon." Moreland testified that all his doctors recommended against back surgery because it could potentially do more harm than good.

¶ 12     In July 2022, as part of Moreland's reinstatement application, he underwent a physical examination with Dr. Kristin Houseknecht, a physician with Concentra Medical Center. She concluded that Moreland was not cleared for full, unrestricted duty because his treating physician, Dr. Mardjetko, had opined that he was "permanently disabled." Later that month, Sergeant Stanley Williams, the commanding officer of the Chicago Police Department's medical services section, wrote to Robert Landowski, the director of the Chicago Police Department's human resources division, that the physical examination "disclosed that [Moreland] is NOT QUALIFIED to return to duty without restrictions. Based on restrictions per treating physician, [Moreland] is not a candidate for Limited Duty." According to Moreland's testimony, the restrictions placed on him by his treating doctors did not qualify him for limited duty, and the Chicago Police Department had not offered him a position in any capacity to return to work. Moreland testified that, had the Chicago Police Department offered him "any" position to return, he would have accepted it.

¶ 13    During the hearing, Moreland testified that he had an 11-month-old daughter and still suffered from debilitating back spasms, which required him to lay on the ground to alleviate. Moreland explained that, due to those spasms, there was "no chance that [he] could carry a gun." Moreland further testified that he was doing everything he could to return to work by following a treatment plan from the Illinois Bone and Joint Institute. The only other testimony at the hearing came from Dr. Peter Orris, who explained some of the procedures that Moreland underwent. Dr. Orris did not give an opinion about whether Moreland was disabled. Following the testimony, the Board held a closed meeting to deliberate. Subsequently, the Board voted 6 to 0 to deny Moreland duty disability benefits and ordinary disability benefits.

¶ 14                          B. The Written Decision and Order

¶ 15    In the Board's written decision and order, it detailed the evidence and testimony from the hearing, including Moreland's lengthy medical history following his February 28, 2017, vehicle accident. In particular, the Board observed that, following the independent medical examination of Moreland, Dr. Levin concluded that Moreland could safely carry, handle, and use his firearm as well as other official functions. In turn, the Board noted Dr. Levin's opinion that Moreland could work in a full, unrestricted capacity. The Board further observed that Dr. Mardjetko, Moreland's treating physician, concluded that Moreland could not safely carry, handle, and use his firearm and, ultimately, opined that Moreland was permanently disabled from active police duties. However, the Board asserted that nothing in the record demonstrated Dr. Mardjetko was aware that Moreland passed an annual prescribed firearm qualification certification with the Chicago Police Department in 2021 when Dr. Mardjetko rendered his opinion regarding Moreland's permanent disability.

¶ 16    Although the Board highlighted that Dr. Mardjetko and Dr. Levin reached opposite conclusions on Moreland's ability related to his firearm and opposite opinions on his ability to work in a full, unrestricted capacity, the Board placed a greater emphasis on the opinions and conclusions of Dr. Levin, in part, due to Dr. Mardjetko's apparent unawareness of Moreland's firearm certification. Additionally, the Board asserted that it "ha[d] the exclusive jurisdiction over [Moreland's] claim," and based upon the evidence, it found that Moreland was "not disabled from police service because he is capable of performing police duties in the Chicago Police Department." The Board added that "Any reference to the determination as to the City's assignment decisions in the Chicago Police Department does not overcome [the Board's] exclusive jurisdiction over this matter." Consequently, the Board denied Moreland duty disability and ordinary disability benefits.

¶ 17                              C. Circuit Court Proceedings

¶ 18    In December 2022, Moreland filed a two-count complaint in the circuit court. Count I, which he later voluntarily dismissed, was for a writ of *mandamus* compelling the Board to award him disability benefits immediately. Count II was for administrative review of the Board's decision pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). The Board appeared and filed the administrative record in the case. Following briefing and oral argument, the circuit court found that the Board's decision to deny Moreland's claim for disability benefits was not against the manifest weight of the evidence and affirmed the Board's decision.

¶ 19    This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21    Moreland contends that the Board erred in denying him duty disability and ordinary disability benefits. He argues that the Board's decision placed him in an untenable catch-22

situation where he is unable to work because his own employer, the Chicago Police Department, has determined he is disabled and will not assign him a position within the department yet he cannot obtain disability benefits.

¶ 22    Moreland sought duty disability benefits pursuant to article 5 of the Illinois Pension Code (Code) (40 ILCS 5/5-101 *et seq.* (West 2022)). Article 5 of the Code governs the policemen's annuity and benefit fund for cities with a population over 500,000 people, such as Chicago. The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)) governs judicial review of final administrative decisions of the Board. 40 ILCS 5/5-228 (West 2022). In administrative review, we review the decision of the administrative body, here the Board, rather than that of the circuit court. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 28.

¶ 23    The standard of review determines how much deference we afford the Board's determination. *Id.* ¶ 29. The standard of review depends on whether the issue on appeal is a question of law, a question of fact, or a mixed question of law and fact. *Id.* Whether a claimant is disabled within the meaning of the Code (see 40 ILCS 5/5-115 (West 2022)) is a question of fact. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446, 464, 469-70 (2009). The Board's "factual findings are *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 95. Factual findings will be deemed against the manifest weight when the opposite conclusion is clearly evident. *Id.*

¶ 24    In an administrative hearing, the claimant, here Moreland, has the burden of proof. *Kouzoukas*, 234 Ill. 2d at 464. Under section 5-154(a) of the Code (40 ILCS 5/5-154(a) (West 2022)): "An active policeman who becomes disabled *** as the result of injury incurred *** in the performance of an act of duty, has a right to receive duty disability benefit" generally at the

rate of 75% of his or her salary. For ordinary disability benefits, "[a] policeman less than age 63 who becomes disabled *** as the result of any cause other than injury incurred in the performance of an act of duty, shall receive ordinary disability benefit during any period or periods of disability exceeding 30 days, for which he does not have a right to receive any part of his salary" at a rate of 50% of his salary. *Id.* § 5-155. The Code defines "[d]isability" as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." *Id.* § 5-115. The only issue in this case is whether the Board properly found that Moreland was not disabled.

¶ 25     It is undisputed that Dr. Levin, the Board's appointed doctor, performed an independent medical examination of Moreland and determined that Moreland could work full, unrestricted duty. Relying on Dr. Levin's determination, the Board argues that Moreland was ineligible to receive disability benefits due to the requirement of section 5-156 of the Code (*id*. § 5-156), which provides: "Proof of duty, occupational disease, or ordinary disability shall be furnished to the board by at least one licensed and practicing physician appointed by the board." No Illinois decision has interpreted this portion of section 5-156. However, section 6-153 of the Code (40 ILCS 5/6-153 (West 2022)), which is a part of article 6 of the Code and governs the firemen's annuity and benefit fund for cities with a population over 500,000 people, has the same requirement and uses the same language: "Proof of duty, occupational disease, or ordinary disability shall be furnished to the Board by at least one licensed and practicing physician appointed by the Board." Additionally, both provisions were created through the same legislation. See 1963 Ill. Laws 228-29 (§ 5-156); 1963 Ill. Laws 270 (§ 6-153).

¶ 26     In *Nowak v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 315 Ill. App. 3d 403, 410 (2000), the appellate court interpreted the relevant portion of section 6-153 of the Code and noted the case presented an issue of first impression. The court highlighted that

the word " 'shall' " generally expressed the legislature's intent for a mandatory reading. *Id.* at 411. Given the legislature's use of the word "shall" in section 6-153, the court concluded the plain language of section 6-153 required "that, before granting a disability benefit, the [Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago] must receive proof of the claimant's disability from at least one physician appointed by [it]." *Id.* at 411-12. Because the doctor appointed by the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago "was unable to conclude whether [the claimant-paramedic] was disabled," the claimant "failed to meet the requirement of section 6-153." *Id.* at 407, 412. Therefore, the appellate court affirmed the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago's decision to deny the claimant duty disability benefits. *Id.* at 412.

¶ 27    Given the identical language of sections 5-156 and 6-153 of the Code, and their creation through the same legislation (see 1963 Ill. Laws 228-29 (§ 5-156); 1963 Ill. Laws 270 (§ 6-153)), section 5-156 should be interpreted in the same manner as section 6-153. See *Robbins v. Board of Trustees of the Carbondale Police Pension Fund of Carbondale*, 177 Ill. 2d 533, 541 (1997) ("It is fundamental that where a word or phrase is used in different sections of the same legislative act, a court presumes that the word or phrase is used with the same meaning throughout the act, unless a contrary legislative intent is clearly expressed."). To this end, one federal court has found that, under section 5-156, "the [C]ode requires 'duty, occupational disease, or ordinary disability' to be proven by 'at least one licensed and practicing physician appointed by the board.' " *Taylor v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, No. 22-CV-6104, 2023 WL 6213797, at *2 (N.D. Ill. Sept. 25, 2023) (quoting 40 ILCS 5/5-156 (West 2022)).

¶ 28    If we were to interpret section 5-156 in the same manner that *Nowak* interpreted section 6-153, we would have to conclude that the Board properly denied Moreland disability benefits. As

previously discussed, Dr. Levin was the only doctor appointed by the Board in this case, and he concluded that Moreland could "work in a full unrestricted capacity" despite his lumbar spine and hip issues. In other words, Dr. Levin found that Moreland's physical condition did not prevent him from performing any assigned duties in the police service, and thus, he was not disabled within the meaning of the Code. See 40 ILCS 5/5-115 (West 2022). However, given the specific facts of the present case, construing section 5-156 in the same manner that *Nowak* interpreted section 6-153 would ignore our supreme court's decision in *Kouzoukas*, 234 Ill. 2d 446, and a recent decision by this court in *Ohlicher v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2024 IL App (1st) 231699-U.

¶ 29    In *Kouzoukas*, 234 Ill. 2d at 448-49, a former Chicago police officer injured her back while on duty, and over the next year, she worked limited duty occasionally, but otherwise was on medical leave. Her primary treating physician concluded that she had to limit her walking, sitting, and standing to no more than 30 to 45 minutes at any given time and she could not wear her gunbelt. *Id.* at 454. After applying for duty disability benefits, the Board held a hearing, where the officer's primary treating physician testified that she could not perform desk duty due to her back issues. *Id.* at 455. The Board's appointed doctor testified that he did not provide an opinion in his report to the Board as to whether the officer could return to work because the officer's disability was not "clear cut." *Id.* at 457. But the Board's appointed doctor testified that it would not be " 'prudent' " to have the officer return to full, unrestricted duty, though she could return to work with specific restrictions. *Id.* The commanding officer of the Chicago Police Department's medical services section testified that there were various positions within the department that were considered "restricted duty positions," which could be assigned to officers needing accommodations. *Id.* at 459. The commanding officer suggested a position that could

accommodate the officer's needs, but he acknowledged such a position had never been offered to her. *Id.* at 460. Ultimately, the Board denied the officer duty disability benefits. *Id.* at 461.

¶ 30    On appeal to our supreme court, it initially concluded that many of the Board's factual findings—namely that the officer only experienced subjective pain and she could return to full, unrestricted work—were against the manifest weight of the evidence. *Id.* at 465-68. In addition, the court determined that the officer presented evidence that she could not perform " 'any assigned duty.' " *Id.* at 470. Although the Board presented evidence there was a position within the Chicago Police Department that "might" accommodate the officer's restrictions, the Board did not present any evidence that such a position was offered to her. *Id.* at 469. Given this, the court found "the manifest weight of the evidence show[ed] that [the officer] carried her burden of proving that she was disabled, that is, that she had a physical condition which made her incapable of performing any assigned duty and that no position within her limitations was offered to her." *Id.* at 470.

¶ 31    Still, the Board argued that the officer's application for disability benefits could not depend on the Chicago Police Department having an available position consistent with her restrictions because, to hold as such, would encroach on the Board's exclusive, original jurisdiction. *Id.* at 470-71. In rejecting this argument, the court stated:

> "The Board has the duty under the Code to determine whether a claimant is disabled. In the case at bar, [the officer] presented evidence which established that she had chronic back pain which severely limited her ability to sit, stand, walk, drive, and wear a gunbelt. Moreover, because of these limitations, [the officer's] doctors did not provide her with a release to return to work. As a result, the Chicago police department would not reassign [her] to *any* position. Under these circumstances, [the officer] met her burden of proving that she was disabled. To

hold otherwise would be to place [her] in an untenable 'catch 22' situation—unable to work because the Chicago police department will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." (Emphasis in original.) *Id.* at 471.

Consequently, our supreme court held that the Board wrongly determined the officer had not met her burden to prove she was disabled. *Id.* at 470-71.

¶ 32    In *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 8, based on an officer's elbow injury, his treating physician determined that he could return to work with sedentary, light duty but barred him from using his firearm. After the officer applied for duty disability benefits, the Board's appointed doctor concluded that the officer could return to limited duty and he had the ability to use a firearm. *Id.* ¶¶ 9-10. However, the Board's appointed doctor would not conclude that the officer could safely perform an arrest and did not conclude that he could return to full, unrestricted duty. *Id.* ¶ 10. The officer applied for reinstatement twice, and both times, the Chicago Police Department's medical services section denied his application and determined he was not qualified to return without restrictions and not a candidate for limited duty. *Id.* ¶¶ 11, 16. Still, the Board denied him duty disability benefits, finding him capable of performing police duties. *Id.* ¶¶ 12, 15.

¶ 33    On appeal, this court observed that, although the officer's treating physician and the Board's appointed doctor agreed the officer could perform limited duty work, the officer had "presented uncontroverted evidence that he was never offered a limited duty position within the [Chicago Police] Department." *Id.* ¶¶ 22, 25. As a result of the officer's restrictions and the department's failure to offer him a limited duty position, this court found the officer "was in a catch-22 situation" like the officer in *Kouzoukas*. *Id.* ¶ 26. The court stated:

"[The officer] was denied reinstatement as the [Chicago Police] Department determined that his injury rendered him incapable of performing the duties of an active police officer. The Board determined he was not disabled and was ineligible to receive duty disability benefits because it found that his injury did not prevent him from 'performing sworn, limited police duties.' " *Id.*

This court concluded "where the medical evidence established that his line-of-duty injury prevented him from performing duties of an active police officer and no evidence was presented that he was offered a limited duty position within the Department," the Board's determination that the officer was not disabled within the meaning of the Code was against the manifest weight of the evidence. *Id.* ¶ 27. Notably, following the decision, the Board filed a petition for leave to appeal to our supreme court, which was denied. See *Ohlicher v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, No. 130914 (Ill. Sept. 25, 2024).

¶ 34        *Kouzoukas* and *Ohlicher* demonstrate how section 5-115 of the Code (40 ILCS 5/5-115 (West 2022)), which defines "[d]isability," and section 5-156 of the Code (*id.* § 5-156), which requires a Board-appointed doctor providing proof of a claimant's disability to the Board, interact. First, *Kouzoukas* and *Ohlicher* help define the word "[d]isability" in the Code. See *id.* § 5-115 (a disability is "[a] condition of physical *** incapacity to perform any assigned duty or duties in the police service"). Although the word "any" is not defined by the Code, *Kouzoukas* and *Ohlicher* show that "any" means, in essence, "some." See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/any (last visited Nov. 4, 2024) [https://perma.cc/44ZG-FQB6] (defining "any" as "a or some without reference to quantity or extent"). In other words, an officer is disabled if they cannot perform unrestricted work and limited duty work.

¶ 35 For example, in both *Kouzoukas* and *Ohlicher*, the Board's appointed doctors determined that Chicago police officers could return to work with restrictions, *i.e.*, perform limited duty work. *Kouzoukas*, 234 Ill. 2d at 457; *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 10. Ordinarily, those conclusions would mean that the officers were *not* disabled, because, despite their physical condition, they could perform *some* duty or duties, if those duty or duties were assigned to the officers. But, the evidence in both cases showed that the Chicago Police Department did not offer the officers positions accommodating their restrictions. *Kouzoukas*, 234 Ill. 2d at 470-71; *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 22. Thus, despite the Board's appointed doctors determining that the officers could perform *some* duties under the appropriate circumstances, the officers were nevertheless disabled within the meaning of the Code because no positions accommodating their limitations had been offered to them. See *Terrano v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 315 Ill. App. 3d 270, 276 (2000) ("[I]t is a firm offer of a limited duty position that could be performed by an individual with the applicant's physical limitations that renders the applicant not disabled within the meaning of the Code despite his inability to perform the duties of an active police officer.").

¶ 36 As our supreme court stated in *Kouzoukas*, 234 Ill. 2d at 471, to find an officer disabled under such circumstances would place the officer "in an untenable 'catch 22' situation—unable to work because the Chicago police department will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." See also *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 26 (discussing the "catch-22 situation"). Placing an officer in such an untenable and unjust situation therefore precludes section 5-156 of the Code (40 ILCS 5/5-156 (West 2022))—requiring a Board-appointed doctor providing proof of a claimant's disability to the Board—from being applied as literally written. See *Cassidy v. China Vitamins, LLC*, 2018 IL

122873, ¶ 17 (asserting that the "literal reading [of a statute] must fail if it yields absurd, inconvenient, or unjust results").

¶ 37    In the present case, the Board's denial of Moreland's application for disability benefits placed him in the same catch-22 situation as the officers in *Kouzoukas* and *Ohlicher*, albeit under different circumstances. No one disputes that Dr. Levin, the Board's appointed doctor, concluded that Moreland could return to full, unrestricted duty, which ordinarily would mean Moreland is *not* disabled within the meaning of the Code. See 40 ILCS 5/5-115 (West 2022). Nevertheless, upon Moreland's application for reinstatement with the Chicago Police Department, the department declined to offer him *any* position—either a full, unrestricted duty position or a limited duty position. As such, Moreland's physical condition rendered him unable to perform any assigned duty or duties in the police service. See *id.* In turn, just like the officers in *Kouzoukas* and *Ohlicher*, the Chicago Police Department's denial of reinstatement renders Moreland unable to work for the department yet unable to obtain disability benefits to compensate him for his inability to work for the department. As a result, despite Dr. Levin's conclusion, the Board's finding that Moreland was not disabled within the meaning of the Code was against the manifest weight of the evidence, as the opposite conclusion is clearly evident based on the evidence. Given the evidence presented by Moreland, he met his burden to prove he is disabled within the meaning of the Code. Consequently, the Board's decision to deny Moreland duty disability benefits based on him being not disabled was erroneous.

¶ 38    We recognize the interpretation of section 6-153 in *Nowak* and the fundamental statutory interpretation cannon "that where a word or phrase is used in different sections of the same legislative act, a court presumes that the word or phrase is used with the same meaning throughout the act, unless a contrary legislative intent is clearly expressed." *Robbins*, 177 Ill. 2d at 541.

However, in *Nowak*, the issue of reinstatement to a position that could accommodate the claimant's physical condition never arose. The issue of reinstatement did arise in *dicta* in *Reed v. Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago*, 376 Ill. App. 3d 259, 269 (2007), where a Chicago firefighter argued it was unfair for the Retirement Board of Fireman's Annuity and Benefit Fund of Chicago to deny him duty disability benefits when the Chicago Fire Department found him unfit for duty and denied him reinstatement. Initially, the appellate court found that the firefighter had forfeited review of this issue. *Id.* at 270. Nevertheless, relying on *Nowak*, the court concluded that, had the issue been preserved, the firefighter would not have been entitled to duty disability benefits because no Board-appointed physician had furnished proof that he was disabled. *Id.* However, the appellate court decided *Reed* in 2007, two years before our supreme court's decision in *Kouzoukas*, and the reinstatement issue was *dicta* because the claimant had forfeited administrative review of the issue. We cannot say how the *Reed* court would have discussed section 6-153 and the claimant's denial of reinstatement with the benefit of *Kouzoukas* and its repudiation of the catch-22 situation, which, as discussed, precludes section 5-156 of the Code (40 ILCS 5/5-156 (West 2022)) from being applied as literally written. See *Cassidy*, 2018 IL 122873, ¶ 17. But, to the extent the decisions are in conflict, *Kouzoukas* obviously takes precedent.

¶ 39    Still, the Board argues making its disability benefits decisions contingent on the Chicago Police Department's work assignments encroaches on the exclusive, original jurisdiction of the Board over disability benefits matters. See 40 ILCS 5/5-189 (West 2022) (providing that "[t]he Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds"). But this exact argument was rejected in *Kouzoukas*, 234 Ill. 2d at 470-72, and *Ohlicher*, 2024 IL

- 17 -

App (1st) 231699-U, ¶ 28. During oral argument, the Board also suggested that officers unhappy with their placement in catch-22 situations could simply sue the Chicago Police Department to be reinstated. However, in *Buttitta v. City of Chicago*, 9 F.3d 1198, 1205 (7th Cir. 1993), the Seventh Circuit Court of Appeals found that, where the Chicago Police Department provides an inactive officer a sufficient opportunity to demonstrate his or her fitness for active duty through a physical examination and the Chicago Police Department does not find the officer fit for duty, the inactive officer has no cause of action to be reinstated.

¶ 40    Given our conclusion that Moreland met his burden to prove that he is disabled within the meaning of the Code, the order of the circuit court and the decision of the Board must be reversed. See *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 30. Under the Code, to be entitled to duty disability benefits, a claimant must prove (1) he or she was an active police officer, (2) who became disabled, (3) as a result of an injury incurred in the performance of an act of duty. 40 ILCS 5/5-154(a) (West 2022). Because the Board only premised its denial of Moreland's application for duty disability benefits based on the disability element, which we have just concluded was against the manifest weight of the evidence, Moreland is entitled to duty disability benefits. See *Ohlicher*, 2024 IL App (1st) 231699-U, ¶ 30.

¶ 41    Additionally, as Moreland requests on appeal, he is entitled to court costs and litigation expenses, including reasonable attorney fees, for prevailing in this administrative review action. See 40 ILCS 5/5-228 (West 2022). To this end, we remand the matter to the circuit court to conduct a hearing to determine the court costs and litigation expenses, including reasonable attorney fees, to which Moreland is entitled pursuant to section 5-228 of the Code (*id.*). See *Siwinski v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 2019 IL App (1st) 180388, ¶ 36. We note that Moreland has also requested that he be awarded the cost of any medical

insurance he incurred as a result of the Board denying him duty disability benefits. The court can consider this request in conjunction with its hearing to determine the costs and expenses he is entitled to statutorily. Further, upon remand to the circuit court, it shall order the Board to grant Moreland's application for duty disability benefits. See *id.* (upon remand to the circuit court to conduct a hearing on court costs and litigation expenses owed to a claimant-fireman, directing the court to also "enter an order remanding the matter to the [Retirement Board of the Firemen's Annuity and Benefit Fund of the City of Chicago] for an award of duty disability benefits").

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the decision of the Board, reverse the judgment of the circuit court of Cook County, and remand the matter to the circuit court with directions.

¶ 44    Board decision reversed and circuit court judgment reversed; cause remanded.

---

***Moreland v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2024 IL App (1st) 240049**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-12585; the Hon. Sophia H. Hall, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Ralph J. Licari, of Ralph J. Licari & Associates, Ltd., of Northfield, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Sarah A. Boeckman and Vincent D. Pinelli, of Burke Burns & Pinelli, Ltd., of Chicago, for appellee. |

---