**2025 IL 131343**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 131343)

DONALD B. MORELAND, Appellee, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Appellant.

*Opinion filed November 20, 2025.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Theis, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) denied the application of plaintiff, Donald B. Moreland, for duty disability benefits. The circuit court of Cook County affirmed the Board's decision. Plaintiff appealed, and the Appellate Court, First District, reversed and remanded. 2024 IL App (1st) 240049. Relying on this court's decision in

*Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446 (2009), the appellate court held that the Board should have awarded plaintiff a duty disability pension because the Chicago Police Department had determined that he was disabled and would not assign him a position within the department. We allowed the Board's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023). On appeal, the Board argues that (1) plaintiff's disability claim was properly denied because he did not provide the Board with proof of disability from at least one doctor appointed by the Board (see 40 ILCS 5/5-156 (West 2022)) and (2) this court's decision in *Kouzoukas* is distinguishable and does not mandate that plaintiff be paid a duty disability pension. For the following reasons, we reverse the appellate court's judgment and affirm the circuit court's judgment upholding the Board's decision.

¶ 2                                   BACKGROUND

¶ 3        Plaintiff became a Chicago police officer in 2013. On February 28, 2017, he was injured in a traffic accident while on duty. Plaintiff was involved in the accident while responding to a call of a person shot. The accident resulted in plaintiff's vehicle hitting a parked vehicle and a tree. Plaintiff sustained injuries to his hip and lower back. In February 2022, plaintiff submitted an application to the Board for duty disability benefits. The Board held a hearing on his application in October 2022.

¶ 4        Plaintiff testified at the hearing, and plaintiff and the Board both introduced medical records into evidence. Plaintiff testified that the traffic accident resulted in injuries to his lower and upper back, both hips, and left leg. His only previous injury to his lower back was from a weightlifting injury in 2006, but he described this as a pulled muscle. He completely recovered from that injury and had no more problems with his back until the traffic accident. Moreland went to the emergency room approximately six weeks after the accident because he was having severe pain in his lower back. The pain was so severe that he could not get out of bed. He was prescribed fentanyl in the emergency room and was told to follow up with his treating physician. On April 10, 2017, plaintiff went on medical leave due to his back pain.

¶ 5      The following month, plaintiff saw his primary care physician, Dr. Robert Demke. Dr. Demke referred him to a chiropractor for physical therapy and suggested that he get an MRI. However, the MRI was not approved by the city. In July 2017, plaintiff returned to work full time.

¶ 6      In August 2017, plaintiff went to see Dr. Brian Clay, a pain specialist at the Illinois Bone and Joint Institute, because he was still having issues with his lower back. Clay referred plaintiff to physical therapy and recommended an MRI. The city once again did not approve the MRI. Plaintiff continued working full, unrestricted duty until December 2020, when he went on medical leave after contracting COVID-19.

¶ 7      On January 9, 2021, plaintiff continued on medical leave, but this time because his lower back problems had not resolved. Plaintiff had seen his treating physician, Dr. Berger, and explained to him that he was having extreme lower back pain and extreme back spasms. Berger told him that he would not clear him to go back to work until he had an MRI. Plaintiff underwent an MRI in late January 2021. The MRI showed multiple herniated discs and disc degeneration.

¶ 8      Dr. Clay reviewed plaintiff's MRI and determined that plaintiff's disc issues were clinically significant. Clay diagnosed plaintiff with low back pain, lumbar radiculopathy, and lumbar disc herniation. Dr. Clay referred plaintiff to an orthopedic surgeon at the Illinois Bone and Joint Institute, Dr. Steven Mardjetko. According to plaintiff, Dr. Mardjetko told him that surgery was not an option because of his extensive multilevel disc herniations. Rather, physical therapy and pain management were his only options. Dr. Mardjetko also recommended that plaintiff undergo an electromyography of his lower extremities.

¶ 9      Plaintiff eventually underwent more imaging of his back and left hip. The electromyography showed that he had mild chronic L5 radiculopathy on his right side. Dr. Ritesh Shah, another doctor at the Illinois Bone and Joint Institute, diagnosed him with left hip impingement and a labral tear.

¶ 10      In June 2021, plaintiff had surgery on his left hip. Dr. Shane Nho, an orthopedic surgeon with Midwest Orthopedics at Rush performed the surgery. According to plaintiff, Dr. Nho told him that, if he didn't have the procedure, he would eventually

be looking at a complete hip replacement. Dr. Nho performed a hip arthroscopy and related procedures on plaintiff's left hip.

¶ 11        In September 2021, plaintiff again saw Dr. Mardjetko because of his lower back problems. Mardjetko recommended that plaintiff get a functional capacity evaluation. Until he could receive one, Dr. Mardjetko considered plaintiff temporarily disabled. Plaintiff testified that he requested the functional capacity evaluation but that it was denied because he had already been deemed disabled by Dr. Mardjetko.

¶ 12        Dr. Nho's medical notes showed that, by October 2021, plaintiff was progressing well in his recovery from hip surgery, but Nho recommend that plaintiff remain off duty while he continued with physical therapy. At around the same time, plaintiff exhausted his medical leave and began an unpaid personal disability leave of absence. In March 2022, Dr. Nho determined that plaintiff had reached maximum medical improvement with respect to his left hip and approved plaintiff's return to full, unrestricted duty as it related to his left hip. However, Dr. Nho noted that plaintiff continued to complain of lower back pain and was receiving treatment for it.

¶ 13        On May 10, 2022, plaintiff was seen by Dr. Jay Levin, a board-certified orthopedic surgeon appointed by the Board to conduct an independent medical evaluation. Dr. Levin gave plaintiff an examination and reviewed his medical records. In Dr. Levin's report, he summarized plaintiff's medical history and test results. He determined that plaintiff had reached maximum medical improvement on March 7, 2022, and could return to work in a full duty, unrestricted capacity. Dr. Levin determined that plaintiff could maintain an independent and stable gait without assistance and could safely (1) carry, handle, and use a police department-approved firearm; (2) drive a motor vehicle; and (3) effectuate an arrest of an active resister.

¶ 14        The same month that plaintiff saw Dr. Levin, plaintiff's attorney told him to request reinstatement with the Chicago Police Department. Plaintiff's attorney suggested this course of action after the Board deferred plaintiff's request for temporary disability benefits in favor of a full hearing. Plaintiff requested reinstatement. The following month Dr. Mardjetko determined that plaintiff was

permanently disabled from police work and was unable to safely carry and discharge a weapon.

¶ 15   In July 2022, as part of plaintiff's reinstatement application, he was evaluated by Dr. Kristin Houseknecht. She determined that plaintiff was not cleared for full, unrestricted duty because Dr. Mardjetko had opined that plaintiff was permanently disabled. Sergeant Stanley Williams, the commanding officer of the Chicago Police Department's medical services section, wrote to Robert Landowski, the director of the Chicago Police Department's human resources division, that plaintiff's medical examination showed that he was not qualified to return to duty without restrictions and that plaintiff was not a candidate for limited duty. Plaintiff testified that he would have accepted any position offered by the Chicago Police Department.

¶ 16   Plaintiff testified that he passed his annual firearm qualification with the Chicago Police Department in 2021. However, he also testified that he did not believe he could safely carry or use a firearm. Plaintiff explained that he suffers from debilitating back spasms to the point that he has to lie on the ground. According to plaintiff, these spasms occur "all the time." Because of this, plaintiff testified that he could not safely carry a firearm. Plaintiff worried that, if one of these spasms happened while he was carrying a firearm, he could be killed or his weapon could be taken and someone else could be killed. Plaintiff also testified that he was doing everything possible to return to work by following a treatment plan from the Illinois Bone and Joint Institute.

¶ 17   Following the hearing, the Board held a closed meeting to deliberate. The Board subsequently voted 6 to 0 to deny plaintiff duty disability benefits and ordinary disability benefits. The Board later issued a written decision and order. In its written order, the Board relied on Dr. Levin's opinion that plaintiff is capable of working in a full, unrestricted capacity. The Board noted that Dr. Mardjetko, plaintiff's treating physician, opined that plaintiff was disabled with respect to his lumbar spine based on his inability to safely carry, handle, and use a police department-approved firearm. However, the Board noted that there was no evidence in the record that Dr. Mardjetko was aware of plaintiff's successful qualification with his firearm in March 2021. The Board acknowledged that a plaintiff's treating physician may have a unique insight into a patient's condition but explained that it is not required to give greater weight to the opinions and conclusions of a treating

physician. The Board explained that it was electing to place greater weight on Dr. Levin's opinions and conclusions. The Board further explained that, as it has exclusive jurisdiction to determine eligibility for a disability pension, any reference to the assignment decisions of the Chicago Police Department does not overcome the Board's exclusive jurisdiction.

¶ 18    On administrative review, the circuit court of Cook County affirmed the Board's decision. The circuit court determined that the Board's decision was not against the manifest weight of the evidence.

¶ 19    Plaintiff appealed, and the Appellate Court, First District, reversed and remanded. 2024 IL App (1st) 240049. The court first addressed the Board's argument that plaintiff's claim for disability benefits failed because plaintiff had not submitted proof of disability from a Board-appointed doctor. Section 5-156 of the Illinois Pension Code (Code) (40 ILCS 5/5-156 (West 2022)) provides, in part, that "[p]roof of duty, occupational disease, or ordinary disability shall be furnished to the board by at least one licensed and practicing physician appointed by the board." Here, the Board-appointed doctor—Dr. Levin—opined that plaintiff was not disabled. The court noted that no Illinois decision has interpreted this portion of section 5-156. 2024 IL App (1st) 240049, ¶ 25. However, in *Nowak v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 315 Ill. App. 3d 403 (2000), the appellate court had considered an analogous Code section—section 6-153 (40 ILCS 5/6-153 (West 1992) (renumbered as 40 ILCS 5/6-163))—which applies to the firemen's annuity and benefit fund for cities with a population over 500,000. That section contains the same sentence at issue in this case, and the *Nowak* court determined it to be mandatory. See 2024 IL App (1st) 240049, ¶ 26 (citing *Nowak*, 315 Ill. App. 3d at 411-12). Thus, the *Nowak* court held that a claimant's disability claim must fail when he fails to present proof of disability from a Board-appointed doctor. *Id.*

¶ 20    Here, because the relevant statutory provisions are identical, the appellate court explained that it would ordinarily give them the same interpretation. *Id.* ¶ 27. Under this interpretation, plaintiff's claim would have to fail, as the only doctor appointed by the Board concluded that plaintiff was not disabled. *Id.* ¶ 28. However, the court held that following *Nowak* would mean ignoring this court's decision in *Kouzoukas*. *Id.*

¶ 21        In that case, a Chicago police officer injured her back while on duty. *Kouzoukas*, 234 Ill. 2d at 448. At her hearing for a duty disability pension, her treating physician testified that she could not even perform desk duty due to her back issues. *Id.* at 455. The Board's appointed doctor was unable to provide an opinion on whether she could return to work because her disability was not "clear cut." *Id.* at 457. However, he testified that it would not be prudent for her to return to full, unrestricted duty. He believed that she could work with specific restrictions. *Id.* The commanding officer of the Chicago Police Department's medical services testified that there were positions within the police department that could accommodate her restrictions but admitted that no such position had been offered to her. *Id.* at 459-60. The Board determined that the officer was not disabled and could return to work in a full duty capacity with or without restrictions. *Id.* at 461-62. This court held this determination to be against the manifest weight of the evidence. *Id.* at 468-69. This court then explained that this conclusion was not altered by the availability of a position within the officer's restrictions if such a position was never offered to the officer. *Id.* at 469-70. In rejecting the Board's argument that an officer's right to a disability pension cannot turn on the offer of a position within the Chicago Police Department because this would encroach on the Board's exclusive jurisdiction to determine disability, this court reiterated that, under these circumstances, the plaintiff had proved she was disabled. *Id.* at 471. This court further stated that "[t]o hold otherwise would be to place [her] in an untenable 'catch 22' situation—unable to work because the Chicago police department will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." *Id.* The appellate court held that plaintiff in this case was in the same "catch 22" situation as the officer in *Kouzoukas*. 2024 IL App (1st) 240049, ¶ 37. Because the Chicago Police Department had not offered him any position, he was disabled within the meaning of the Code. Accordingly, despite Dr. Levin's opinion, the Board's decision was against the manifest weight of the evidence. *Id.*

¶ 22        We allowed the Board's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

- 7 -

¶ 23                                                    ANALYSIS

¶ 24         On appeal, the Board argues that the appellate court erred in relying on
*Kouzoukas*, which the Board claims is inapplicable here. The Board also contends
that the appellate court's analysis of section 5-156 of the Code was correct and that
the court should have found that it defeats plaintiff's claim. On administrative
review, this court reviews the decision of the Board rather than that of the circuit
court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531
(2006). We address the Board's statutory argument first.


¶ 25                                               I. Section 5-156

¶ 26         Section 5-156 of the Code provides:

            "*Proof of duty, occupational disease, or ordinary disability shall be furnished
            to the board by at least one licensed and practicing physician appointed by the
            board.* In cases where the board requests an applicant to get a second opinion,
            the applicant must select a physician from a list of qualified licensed and
            practicing physicians who specialize in the various medical areas related to duty
            injuries and illnesses, as established by the board. The board may require other
            evidence of disability. A disabled policeman who receives a duty, occupational
            disease, or ordinary disability benefit shall be examined at least once a year by
            one or more physicians appointed by the board. When the disability ceases, the
            board shall discontinue payment of the benefit, and the policeman shall be
            returned to active service." (Emphasis added.) 40 ILCS 5/5-156 (West 2022).

            The Board contends that the plain language of section 5-156 is clear that a plaintiff
            cannot succeed on a disability claim without providing proof of disability from at
            least one doctor appointed by the Board. Because the only Board-appointed doctor
            in this case testified that plaintiff is not disabled, the Board contends that plaintiff's
            claim necessarily fails. The Board points out that the appellate court in *Nowak*
            reached this conclusion with respect to an analogous Code provision applicable to
            firefighters. Plaintiff responds that the Board's position cannot be squared with
            cases that have allowed disability pensions in cases where there was no finding of
            disability from a Board-appointed doctor. At oral argument, counsel for plaintiff
            confirmed that his understanding of the first sentence of section 5-156 is simply

that, before the Board may award a disability pension, the Board must receive an opinion on plaintiff's disability status from at least one Board-appointed doctor.

¶ 27    This is a question of statutory construction. The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent of the legislature. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20. Where the statutory language is clear and unambiguous, this court will apply the statute as written without resort to extrinsic interpretive aids. *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 20. A statute is ambiguous if it is capable of more than one reasonable interpretation. *Green v. Chicago Police Department*, 2022 IL 127229, ¶ 50. We may consider the consequences of construing the statute one way or another, and in doing so, we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Id.* ¶ 51. Issues of statutory interpretation are questions of law that we review *de novo*. *Mercado*, 2025 IL 129526, ¶ 21.

¶ 28    This court considered a similar question concerning a different pension statute in *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485 (2007). In that case, we construed section 3-115 of the Code (40 ILCS 5/3-115 (West 2002)), which provides, in relevant part:

"A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, or by a representative if the officer is under legal disability, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability."[1]

¶ 29    A dispute had arisen in the appellate court over whether this provision means that the three physicians selected by the board must all certify that the officer is disabled or that three physicians selected by the board must file certificates that address the officer's disability status. The First, Second, and Fourth Districts all held that the plain language of the statute required all three board-appointed doctors to certify that the officer was disabled before it could award a disability pension.

_____

[1]This section is in article 3 of the Code, which applies to municipalities of fewer than 500,000 inhabitants. See 40 ILCS 5/3-103 (West 2024).

See *Wade v. City of North Chicago Police Pension Board*, 359 Ill. App. 3d 224 (2d Dist. 2005); *Rizzo v. Board of Trustees of Evergreen Park Police Pension Fund*, 338 Ill. App. 3d 490 (1st Dist. 2003); *Daily v. Board of Trustees of the Police Pension Fund of Springfield*, 251 Ill. App. 3d 119 (4th Dist. 1993). The Third District reached the opposite conclusion in *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713 (3d Dist. 2004). The Third District interpreted the provision to mean that three physicians selected by the board must merely file certificates addressing the officer's disability status but that the board remains free to award a disability pension even if all three board-appointed physicians did not believe the officer was disabled. *Id.* at 729. Justice Schmidt dissented from this portion of the majority's opinion. *Id.* at 730 (Schmidt, J., concurring in part and dissenting in part). Justice Schmidt would have followed the position adopted by the other appellate districts. *Id.* at 731-32. He argued that the majority's position could not be reconciled with the plain language of the statute, and he noted that the legislature had not amended the statute following the interpretations given by the other appellate districts. *Id.* at 732.

¶ 30    This court allowed leave to appeal in *Wade*, and we adopted the Third District's position. *Wade*, 226 Ill. 2d at 490, 514. This court believed that the statute was capable of two reasonable interpretations: requiring either certificates that the officer was disabled or certificates addressing the issue of disability. *Id.* at 511. Relying on the presumption that several statutes relating to the same subject should be governed by a single policy, this court looked to a similar section of the Code applicable to firefighters. *Id.* at 512. Section 4-112 of the Code provided in part:

> " 'A disability pension shall not be paid until disability has been established *by the board* by examinations of the firefighter at pension fund expense by 3 physicians selected by the board and such other evidence as the board deems necessary.' " (Emphasis in original.) *Id.* (quoting 40 ILCS 5/4-112 (West 2002)).

*Wade* noted that at least two appellate court decisions construed this language to mean that the board, rather than any individual examining physician, is the ultimate arbiter of disability. *Id.* (citing *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 210-12 (2006), and *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 369 (2005)). We

acknowledged that the language of section 3-115 was less clear but explained that we found it inconceivable that the legislature intended to treat different classes of emergency responders differently for purposes of obtaining disability. *Id.* at 513. We believed that the legislature could not have intended to make a single physician, rather than the fund's board, the decisionmaker for purposes of ascertaining disability. *Id. Wade* further explained:

> "The legislature has provided that the board of trustees of a police pension fund is the entity statutorily empowered to verify an applicant's disability and right to receive benefits. 40 ILCS 5/3-114.1(d) (West 2002). The board is ultimately responsible for administering the fund and designating beneficiaries. 40 ILC S 5/3-128 (West 2002). To read the statute as requiring the concurrence of all three board-selected physicians would mean that one doctor, out of the three selected by the board, could determine that the applicant is not entitled to benefits, and, even though that opinion conflicts with the well-reasoned opinion of every other doctor, the board would be powerless to override that opinion and authorize the payment of benefits to a disabled applicant. In fact, any hearing conducted by the board subsequent to the filing of that doctor's certificate would be a meaningless exercise, as no disability could be authorized, regardless of the strength of the applicant's evidence of disability. Again, that result cannot be what the legislature intended." *Id.* at 513-14.

Finally, this court noted Justice Schmidt's suggestion that, if a board was inclined to grant a disability pension but did not have three certificates finding the officer disabled, the board could appoint a fourth doctor, and more if necessary (see *Coyne*, 347 Ill. App. 3d at 732). *Wade*, 226 Ill. 2d at 515. This court deemed that suggestion to be unreasonable and wasteful, and we rejected an interpretation that would require the board to expend "additional sums to obtain another opinion of disability solely to corroborate a determination the board has already made." *Id.* at 514. We again reiterated that "[t]he decision regarding disability is for the board, not any individual physician." *Id.*

¶ 31    We choose to give section 5-156 the same construction that we gave section 3-115. As we explained in *Wade*, "[w]e must presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious." *Id.* at

512. We determined in *Wade* that the legislature intended for pension boards, not individual doctors, to be the ultimate arbiters of disability. *Id.* at 514. Accordingly, we believe that the Board would have been within its authority to award plaintiff a duty disability pension despite Dr. Levin's opinion that plaintiff is not disabled.

¶ 32    The Board apparently believes this too, as it held a full hearing on plaintiff's eligibility for a duty disability pension. As *Coyne* explained when rejecting a pension board's interpretation of section 3-115:

"The opinion of a lone minority dissenter like Doctor Harris (five contrary opinions notwithstanding) would *ipso facto* defeat a pension claim, thus rendering section 3-115 a virtual summary dismissal provision. A pension board would have no use for an evidentiary hearing in such cases because, regardless of the weight of the claimant's evidence, and regardless of any credibility issues pertaining to the lone dissenting physician, the outcome of the case would be predetermined by the mere existence of a disagreement between witnesses." *Coyne*, 347 Ill. App. 3d at 729.

Here, despite Dr. Levin's opinion that plaintiff was not disabled, the Board held a full evidentiary hearing and allowed plaintiff to introduce other evidence of disability. This entire process would have been a pointless waste of time if Dr. Levin's opinion precluded the Board from awarding plaintiff a disability pension. Moreover, in the Board's written decision denying plaintiff's claim, the Board explained why it was choosing to credit Dr. Levin's testimony over that of Dr. Mardjetko. Implicit in the Board's written decision is the Board's belief that it had the discretion to credit Dr. Mardjetko's opinion instead. Moreover, if we were to accept the Board's interpretation, that would mean that, in a case in which there was a mountain of evidence supporting the officer's disability application and the lone dissenting opinion came from the Board's appointed doctor, the Board would be powerless to award a disability pension unless it appointed another doctor to evaluate the officer. In *Wade*, this is the exact procedure we would not countenance because we deemed it unreasonable and wasteful. See *Wade*, 226 Ill. 2d at 514. We would not require the Board to expend "additional sums to obtain another opinion of disability solely to corroborate a determination the board has already made." *Id.* Accordingly, consistent with the principles this court announced in *Wade*, we hold that section 5-156 merely requires that, before the Board may award a disability

pension, the Board must receive an opinion on the officer's disability status from at least one Board-appointed doctor. The Board remains the ultimate arbiter of disability, and it has the discretion to credit the testimony of doctors not appointed by the Board.

¶ 33 Because we have given section 5-156 this interpretation, we necessarily overrule *Nowak*. Although *Nowak* involved section 6-153, which applies to firefighters, that section contains the identical language that we have construed here. In *Wade*, we said that we "presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious." *Id.* at 512. We also found it inconceivable that the legislature "would have intended to treat these classes of emergency responders (firefighters and police officers) differently for purposes of ascertaining disability." *Id.* at 513. Accordingly, sections 5-156 and 6-153 should be given the same interpretation. Because *Nowak* employed the precise construction that we reject today, we hereby overrule that decision.

¶ 34 II. The Board's Decision Was Not Against the Manifest
Weight of the Evidence

¶ 35 We next address whether the Board's decision was against the manifest weight of the evidence. Whether the evidence of record supports the Board's denial of a plaintiff's application for a disability pension is a question of fact that is reviewed under the manifest weight of the evidence standard. *Id.* at 505. Rulings on questions of fact are reversed only if they are against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 532. An administrative agency's decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). It is within the province of the administrative agency to resolve any conflicts presented by the evidence and to determine the credibility of the witnesses. *Peterson v. Board of Trustees of the Firemen's Pension Fund of Des Plaines*, 54 Ill. 2d 260, 263 (1973). "The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. If the record contains evidence that supports the agency's

- 13 -

decision, it should be upheld." *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997).

¶ 36    Here, we cannot conclude that the Board's decision was against the manifest weight of the evidence. The evidence contained conflicting medical opinions over whether plaintiff was disabled, and the Board elected to place greater weight on Dr. Levin's opinion. The Board credited Dr. Levin's opinion that plaintiff could work in a full, unrestricted capacity. In its written decision, the Board explained why it believed that Dr. Levin's opinion was more credible than that of Dr. Mardjetko. It is the Board's function to make credibility determinations and to resolve conflicts in the medical evidence. This court's function on administrative review is not to reweigh the evidence or to substitute our judgment for that of the Board. It is merely to determine if the Board's decision was supported by competent evidence. Here, the Board elected to credit the opinion of a board-certified orthopedic surgeon who examined plaintiff and reviewed his medical records. Following this examination and review, Dr. Levin determined that plaintiff could maintain an independent and stable gait without assistance and could safely (1) carry, handle, and use a police department-approved firearm; (2) drive a motor vehicle; and (3) effectuate an arrest of an active resister. Because the Board's conclusion was supported by Dr. Levin's evaluation, we cannot say its decision was against the manifest weight of the evidence.

¶ 37    Nevertheless, plaintiff argues that the Chicago Police Department's refusal to reinstate him means that the Board was required to find him disabled. Plaintiff argues that such a result is mandated by this court's decision in *Kouzoukas*. The appellate court agreed with plaintiff on this point. We disagree and find *Kouzoukas* distinguishable.

¶ 38    *Kouzoukas* involved a Chicago police officer who injured her back while on duty. *Kouzoukas*, 234 Ill. 2d at 448. She applied for duty disability benefits. *Id.* at 448-49. At the hearing on her application, her primary treating physician testified that she could not perform desk duty because of her back issues. *Id.* at 455. The Board's appointed doctor—Dr. Demorest—testified about Kouzoukas's back issues. *Id.* at 456. He said that she suffered from myofascial pain syndrome, and he saw no signs that she was malingering or exaggerating her pain. *Id.* at 456-57. He was asked why he had not included in his report an opinion on whether Kouzoukas

could return to work. *Id.* at 457. Demorest explained that he will advise the Board if a person is "clearly unable to return to work" but, when the disability is not as clear cut, he believed that his proper role was merely to provide facts to the Board and allow it to decide whether the person could return to work. *Id.* However, he testified that he had reservations about returning Kouzoukas to full, unrestricted duty. *Id.* He did not believe that doing so would be prudent. *Id.* However, he believed that she could work if she were to be placed in a position where she could sit and change positions frequently and would not have to stand for long periods of time. *Id.* The commanding officer of the Chicago Police Department's medical services testified that there were various positions within the department that could be assigned to officers needing accommodation, but he acknowledged that no such position was ever offered to Kouzoukas. *Id.* at 460. The Board determined that Kouzoukas was not disabled and could return to work in a full duty capacity with or without restrictions. *Id.* at 461-62. Accordingly, the Board denied Kouzoukas's application. *Id.* at 461. The Board found that neither Kouzoukas nor her treating physician were credible witnesses. *Id.* at 461-62. The Board relied primarily on a report from Dr. Spencer, a spine surgery specialist who concluded that Kouzoukas's back pain was aggravating but not incapacitating. *Id.* at 452. When Dr. Spencer sent her for an MRI of her spine, he recommended that she continue her light duty work assignment. *Id.* Dr. Spencer found Kouzoukas's MRI to be normal, and he believed that her pain was not coming from an identifiable injury in her lumbar spine. *Id.* However, he recommended that her return to work be accompanied by a 20-pound lifting limit. *Id.* On administrative review, the circuit court reversed the Board's denial of Kouzoukas's claim for duty disability benefits. *Id.* at 462. The Board appealed, and the appellate court affirmed. *Id.* This court granted the Board's petition for leave to appeal. *Id.*

¶ 39    This court first considered whether the Board's decision that Kouzoukas was not disabled was against the manifest weight of the evidence. *Id.* at 465. We noted that both of the lower courts had determined that it was. *Id.* This court acknowledged the deferential standard of review but quoted *Wade* for the proposition that, " '[e]ven under the manifest weight standard applicable in this instance, the deference we afford the administrative agency's decision is not boundless.' " *Id.* (quoting *Wade*, 226 Ill. 2d at 507). Rather, this court will set aside an administrative agency's decision that is clearly against the manifest weight of the evidence. *Id.* This court determined that it was faced with such a case. *Id.* at

- 15 -

468. This court reviewed the medical evidence in the case and determined that "the Board's decision to deny Kouzoukas disability benefits because she could return to 'a full duty position with or without restrictions' is against the manifest weight of the evidence." *Id.* at 468-69.

¶ 40　　This court then addressed the Board's alternative argument that, even if this court rejected the Board's determination that Kouzoukas could be returned to full, active duty, it should still find that she was not disabled within the meaning of the Code. *Id.* at 469. The Board relied on section 5-115 of the Code, which defines "disability" as " '[a] condition of physical or mental incapacity to perform *any assigned duty* or duties in the police service.' " (Emphasis in original.) *Id.* (quoting 40 ILCS 5/5-115 (West 2006)). The Board argued that Kouzoukas was not disabled within the meaning of this provision because she was not incapable of performing any assigned duty. The Board relied on the medical services commanding officer's testimony that there were positions within the Chicago Police Department that would be able to accommodate Kouzoukas's restrictions. *Id.*

¶ 41　　This court rejected the Board's argument, as none of these positions had been offered to Kouzoukas. *Id.* at 469-70. This court agreed with the proposition that an officer who cannot return to full police duties may still not be disabled within the meaning of the Code if a position is made available that can be performed by a person with his or her disability. *Id.* at 469. However, this court determined that such a position cannot be considered an " 'assigned duty' " if it was never offered to the officer. *Id.* at 470. The court further noted that whenever Kouzoukas had tried to return to work—whether in a full, active-duty position or in a restricted position—her back pain prevented her from performing the duties assigned to her. *Id.* Thus, she had carried her burden of proving that she was disabled within the meaning of the Code in the absence of an offer of a position that could accommodate her restrictions. *Id.*

¶ 42　　The Board argued that its decision to grant or reject an application for duty disability benefits should not be dependent on the availability of an assignment within the Chicago Police Department within the claimant's restrictions, as this would encroach on the Board's exclusive jurisdiction bestowed on it by the Code. *Id.* at 470-71 (citing 40 ILCS 5/5-189 (West 2006)). This court disagreed, explaining as follows:

"The Board has the duty under the Code to determine whether a claimant is disabled. In the case at bar, Kouzoukas presented evidence which established that she had chronic back pain which severely limited her ability to sit, stand, walk, drive, and wear a gunbelt. Moreover, because of these limitations, Kouzoukas' doctors did not provide her with a release to return to work. As a result, the Chicago police department would not reassign Kouzoukas to *any* position. Under these circumstances, Kouzoukas met her burden of proving that she was disabled. To hold otherwise would be to place Kouzoukas in an untenable 'catch 22' situation—unable to work because the Chicago police department will not assign her to a position in the police service which she can perform, yet unable to obtain disability benefits." (Emphasis in original.) *Id.* at 471.

This court then reiterated that the medical evidence showed that Kouzoukas could work under a strictly prescribed set of restrictions and that the commanding officer of medical services testified that there existed positions within the department that might accommodate these restrictions. *Id.* However, "because the Chicago police department never actually offered Kouzoukas a position within her restrictions, the Board could not say that Kouzoukas was no longer disabled within the meaning of the Code." *Id.*

¶ 43    Here, the appellate court determined that the above-quoted paragraph mandates that plaintiff be awarded a duty disability pension. 2024 IL App (1st) 240049, ¶ 37. The court explained that the Board's denial of plaintiff's application for disability benefits placed him in the same catch-22 situation as the officer in *Kouzoukas*— denied a disability pension but not offered a position in the Chicago Police Department because of his disability. *Id.* Accordingly, the court held that plaintiff had demonstrated that he was disabled within the meaning of the Code and that the Board's decision denying him a duty disability pension was against the manifest weight of the evidence. *Id.* We disagree.

¶ 44    The appellate court improperly read the above paragraph outside of the context of the narrow issue the court was addressing. Again, in *Kouzoukas*, this court determined that the Board's determination that Kouzoukas was not disabled and could return to a full duty position with or without restrictions was against the manifest weight of the evidence. *Kouzoukas*, 234 Ill. 2d at 465. This court noted

- 17 -

that "every medical professional who examined Kouzoukas found that she suffered pain as a result of a lower back strain that occurred on July 25, 2004, and that the pain, in turn, prevented her from returning to work as a full duty police officer." *Id.* at 467. After concluding this, this court then turned to the Board's argument that Kouzoukas was not disabled within the meaning of the Code because the term "disability" is defined in the Code as a " 'condition of physical or mental incapacity to perform any assigned duty or duties in the police service.' " (Emphasis omitted.) *Id.* at 469 (quoting 40 ILCS 5/5-115 (West 2006)). This court had to determine the meaning of the phrase " 'any assigned duty.' " *Id.* The Board argued that it meant that there were positions within the Chicago Police Department that could accommodate the officer's restrictions. *Id.* This court disagreed, explaining that something could not be an " 'assigned duty' " if a position within the department was never offered to the officer. *Id.* at 470. It was in the context of explaining why this holding did not encroach upon the Board's exclusive jurisdiction that this court mentioned Kouzoukas's " 'catch-22' " situation. *Id.* at 471. The court concluded this section of the opinion by explaining that, "because the Chicago police department never actually offered Kouzoukas a position within her restrictions, the Board could not say that Kouzoukas was no longer disabled within the meaning of the Code." *Id.*

¶ 45        Thus, *Kouzoukas* stands for the proposition that an officer who can only work with restrictions is nevertheless disabled within the meaning of the Code if no positions within those restrictions are offered to the officer. This is clear from the following passage:

"In the case at bar, the Board should have granted Kouzoukas a duty disability benefit and instructed her to present herself to the Chicago police department with a doctor's release listing her restrictions as determined at the hearing. Then, if the Chicago police department offered Kouzoukas a position which accommodated the restrictions set forth in her doctor's release, she would no longer be entitled to duty disability benefits. If, however, the Chicago police department was unable to reassign Kouzoukas to a restricted duty position within her limitations, she would remain eligible for duty disability benefits, unless she was found to be ineligible for some other reason or, as a result of a future examination, it was determined that she was no longer disabled." *Id.* at 471-72.

Although this court rejected the Board's interpretation, the Board does not contend that *Kouzoukas* was incorrectly decided. Rather, the Board acknowledges that,

> "[i]n circumstances where limitations prevent a claimant's return to full duty, it is a logical conclusion that some sort of 'disability' persists, and that a retirement board should be required to compensate a claimant for that disability if the claimant's employer cannot provide a position that appropriately accommodates those limitations."

¶ 46    Nevertheless, the Board argues—and we agree—that the present case is in a different procedural posture. Here, we have determined that the Board's decision that plaintiff could return to full, unrestricted duty was not against the manifest weight of the evidence. There is no issue about the meaning of "any assigned duty" in this case. If we were to apply *Kouzoukas*'s "catch-22" analysis in this context, we would effectively be saying that whenever an officer is not offered a position within the Chicago Police Department because of a disability, the Board must award him a disability pension. Even where the Board determined that competent medical evidence established that the claimant was not disabled and could return to a full duty position, it would be forced to award a disability pension if the officer was not offered a position within the department. Such a requirement has no foundation in the statute. To adopt this position would mean ignoring the legislature's statutory scheme and imposing our own rule for when an officer is entitled to a disability pension. Just as we determined in *Wade* that it is for the pension board, not any one physician, to determine a claimant's right to a disability pension (*Wade*, 226 Ill. 2d at 514), it is for the Board, not the Chicago Police Department, to determine that same eligibility.

¶ 47    We note the seeming incongruity of an officer not being reinstated because of a disability and yet not being awarded a disability pension by the Board. Two districts of the appellate court have addressed this issue under Code provisions applicable to firefighters. In *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 514 (2005), a firefighter sustained neck and back injuries while assisting with an ambulance call. The board of trustees of the Village of Downers Grove's Firefighters Pension Fund found that he was not disabled and denied his petition for a disability pension. *Id.* The village's board of police and fire commissioners eventually dismissed the firefighter, determining that he was unwilling and unfit to

- 19 -

perform the job of a firefighter. *Id.* at 515. The plaintiff had told the board that he did not believe he could perform the duties of a firefighter without putting his fellow firefighters at risk. *Id.* The firefighter argued, *inter alia*, that the board of police and fire commissioners' decision to dismiss him was improper because the pension board's decision that he was not disabled was *res judicata*. *Id.* As part of its analysis addressing this issue, the Appellate Court, Second District, acknowledged that, "at first blush, it seems incongruous that separate administrative findings could lead to a firefighter being discharged because of a disability while also being denied a disability pension." *Id.* at 521. However, the court noted that the statutory requirements for obtaining a firefighter's disability pension were more onerous than those applying to the dismissal of a firefighter. *Id.* The court concluded:

> "Given the compelling public interest in ensuring the fitness of firefighters to perform their duties, it is reasonable to conclude that the General Assembly deliberately set the bar lower for a municipality seeking to discharge an unfit firefighter than for a firefighter to obtain a disability pension, and committed the decisions to separate agencies with different missions." *Id.*

¶ 48    In *Reed v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 376 Ill. App. 3d 259, 261 (2007), a firefighter was injured while on duty as a Chicago firefighter and received one year of paid medical leave. He was later dropped from the payroll of the Chicago Fire Department (CFD). *Id.* He applied for reinstatement, but his application was denied. *Id.* He then applied for a duty disability pension. *Id.* The board eventually entered an order finding that he was not entitled to a duty disability pension because his current condition was normal and that he could return to active duty as a firefighter. *Id.* He again sought reinstatement with the CFD, and he was denied reinstatement because the CFD determined that he was unable to perform the essential functions of a firefighter. *Id.* at 261-62. Among the arguments that Reed made on appeal was that it was unfair that he was denied a duty disability pension because he was not disabled while also being denied reinstatement when the CFD found that he was not fit for duty. *Id.* at 269. The Appellate Court, First District, agreed with *Dowrick* and quoted in full its discussion about why these results are not incongruous. *Id. Reed* further quoted the following passage from *Dowrick*:

" 'Indeed, the Village's interest in ensuring the fitness of its firefighters may often diverge from the interests of the participants and beneficiaries of a pension fund in ensuring that the funds are not depleted by dubious claims. The board members cannot act solely in the interests of the fund's participants and beneficiaries if they are also charged with ensuring the safety and welfare of the general public.' " *Id.* at 269-70 (quoting *Dowrick*, 362 Ill. App. 3d at 520).

¶ 49 Although we agree with the reasoning of these cases, we are mindful of the difficult and frustrating position that police officers and firefighters are put in when they are denied reinstatement because of a disability but also denied a disability pension. This is the unfortunate result of the board and the employer being entitled to rely on the opinions of different doctors in determining whether the officer is disabled. We may not, however, ignore the statutory scheme enacted by the legislature and rewrite the statute to change the basis upon which disability pensions are awarded. See *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 558 (2009) (the judiciary does not rewrite statutes "to make them consistent with the court's idea of orderliness and public policy"). Any change to the statutory mechanism for awarding disability pensions must come from the legislature.

¶ 50 Finally, affirming the Board's decision does not mean that we agree with the Board or that we would reach the same decision if we were deciding the issue in the first instance. It simply means that plaintiff has failed to carry his very high burden of demonstrating that the Board's decision was against the manifest weight of the evidence. The Board is entrusted to resolve conflicts in the evidence, and it chose to place greater weight on Dr. Levin's opinion than on Dr. Mardjetko's. We remind the Board, as we did in *Wade*, that it owes a fiduciary duty toward its participants and beneficiaries and the deference we afford its decisions is not boundless. See *Wade*, 226 Ill. 2d at 507. When findings are clearly against the manifest weight of the evidence, we will not hesitate to set them aside. *Kouzoukas*, 234 Ill. 2d at 465. That is not the case here, so the Board's decision must be upheld.

¶ 51                                                    CONCLUSION

¶ 52 For all of the above reasons, the Board's decision to deny plaintiff a duty disability pension was not against the manifest weight of the evidence.

- 21 -

Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 53        Appellate court judgment reversed.

¶ 54        Circuit court judgment affirmed.

¶ 55        Board decision affirmed.